**Bonnie Jean GANN, Plaintiff,**

v.

**Carolyn W. COLVIN, the Commissioner of Social Security, Defendant.**

**No. C 14–4026–MWB.**

United States District Court, N.D. Iowa, Western Division.

Signed March 18, 2015.

Jay Elliott Denne, Munger, Reinschmidt & Denne, Sioux City, IA, for Plaintiff.

Stephanie Johnson Wright, U.S. Attorney's Office, Cedar Rapids, IA, Chris Carillo, Social Security Administration, Dallas, TX, for Defendant.

## MEMORANDUM OPINION AND ORDER REGARDING PLAINTIFF'S OBJECTIONS TO REPORT AND RECOMMENDATION

MARK W. BENNETT, District Judge.

## TABLE OF CONTENTS

I. INTRODUCTION ............................................... 859

II. PROCEDURAL HISTORY .......................................... 860

III. REPORT AND RECOMMENDATION ..................................... 860

IV. GANN'S OBJECTIONS ........................................... 863

V. DISCUSSION ................................................ 865
 A. Standard Of Review ....................................... 865
 B. ALJ's Findings That Gann's Fibromyalgia And Migraines Were Not Severe Impairments Are Supported By Substantial Evidence .......... 866
 1. Legal Standard ....................................... 866
 2. Analysis ........................................... 866
 C. ALJ's RFC Findings And Hypotheticals To VE Are Supported By Substantial Evidence ....................................... 867
 1. Legal Standard ....................................... 867
 2. Analysis ........................................... 868
 D. ALJ's Decision To Discredit Gann Is Supported By Substantial Evidence ............................................. 874
 1. Legal Standard ....................................... 874
 2. Analysis ........................................... 874

VI. CONCLUSION ............................................... 876

## I. INTRODUCTION

This case is before me on a Report and Recommendation (R & R) from Magistrate Judge Leonard T. Strand, filed on February 3, 2015. Report (docket no. 18). In the R & R, Judge Strand recommends that I affirm the Commissioner's decision.

On February 17, 2015, Bonnie Jean Gann (Gann) filed timely objections to the R & R. Plaintiff's Objections to the Report and Recommendation (hereafter Plaintiff's Objections) (docket no. 19). Gann's argument that I should reverse the Administrative Law Judge's (ALJ) denial of benefits as it is not supported by substantial evidence is three-fold: the ALJ erred in (1) finding Gann's migraine headaches and fibromyalgia were not "severe" impairments; (2) determining Gann's RFC and submitting an inadequate hypothetical question to the VE; and (3) discrediting Gann's subjective allegations. The Commissioner has not filed a response to Gann's objections, nor did the Commissioner file any objections to Judge Strand's R & R. The 14–day window in which parties may file objections is now closed. *See* 28 U.S.C. § 636(b)(1)(C); *see also* FED. R. CIV. P. 72(b)(2).

The complete facts are presented in the parties' briefs and Judge Strand's R & R. I recite the salient facts in the discussion section of this Memorandum Opinion and Order. For the reasons discussed below, I accept the recommendations of Judge Strand, and affirm the Commissioner's decision that Gann is not disabled. Accordingly, I enter judgment in favor of the Commissioner and against Gann.

## II. PROCEDURAL HISTORY

On March 31, 2011, Gann filed for Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act, 42 U.S.C. § 401 *et seq.* (Act). The Record (hereafter Tr.) at 156. Gann alleged that her disability began on January 1, 2000. Tr. 12. Gann's claim was denied on June 22, 2011. Tr. 83–90. After her claim was denied, Gann requested a reconsideration of her disability claim. Tr. 91–93. Gann's

request for reconsideration was denied on August 22, 2011. Tr. 96–106. After filing a request for a hearing before an ALJ, the Honorable James D. Goodman, Gann had an administrative hearing on November 20, 2012. Tr. 32–65.

Following the ALJ's hearing, on February 7, 2013, the ALJ issued a ruling, finding Gann was not disabled between March 31, 2011 and February 7, 2013, and denying Gann's application for disability benefits. Tr. 25; *see also Cruse v. Bowen,* 867 F.2d 1183, 1185 (8th Cir.1989) (noting that for SSI benefits, the period at issue is from the date of the claimant's filing of her application). Gann sought review of the ALJ's decision by the Appeals Council, which denied Gann's request for a review on January 24, 2014. Tr. 1–6. Thus, the ALJ's decision became the Commissioner's final decision. Tr. 1. On March 26, 2014, Gann brought suit in federal court seeking review of the Commissioner's decision.[1] Judge Strand's R & R followed on February 3, 2015, which recommends that I affirm the decision of the Commissioner and deny Gann's claim for disability benefits. Report at 1, 26.

## III. REPORT AND RECOMMENDATION

Judge Strand rejected Gann's objections to the ALJ's decision. I briefly summarize Judge Strand's findings below. Then, I discuss the objections Gann raises in response to Judge Strand's R & R.

First, Judge Strand found that the ALJ's decision that Gann's impairments of fibromyalgia and migraine headaches were not "severe" is supported by substantial evidence. Report at 10. Judge Strand was convinced by the Commissioner's contention that, although Gann sometimes

---

1. Gann was represented by Al Sturgeon, an attorney, at the administrative proceedings stage. Tr. 12. A different attorney, Jay Den-

ne, represents Gann on her present claim in federal court. Plaintiff's Objections at 16.

sought treatment for migraines and fibromyalgia, Gann did not establish that such conditions significantly impaired her ability to work. *Id.* "Simply pointing to instances in which Gann was treated for migraines and fibromyalgia, or stating that migraines occurred 'a lot,' does not demonstrate that these conditions significantly limited Gann's physical or mental ability to do basic work activities," wrote Judge Strand. *Id.* According to Judge Strand, the medical evidence did not support Gann's claim that migraine headaches and fibromyalgia significantly limited her ability to work. *Id.* at 11. In addition, Judge Strand found that the ALJ properly gave less credence to Gann's subjective allegations about these two impairments because they were unreliable. *Id.*

Second, Judge Strand found that the ALJ's assessments of Gann's mental and physical residual functional capacity (RFC) are supported by substantial evidence in the record. *Id.* at 17. "The ALJ provided a lengthy explanation, with precise citations to the record, for each component of the physical RFC and mental RFC." *Id.* In reaching that conclusion, Judge Strand was not convinced by Gann's two counter arguments, which sought to undermine the ALJ's RFC findings. *Id.* at 14.

In regards to Gann's first argument, Judge Strand reasoned that the ALJ's mental RFC finding is not contradicted by other findings in the ALJ's opinion or by Dr. Marandola's opinion. This is because mental impairments that may have been deemed "severe or not" at steps two and

three of the ALJ's analysis "do not automatically translate into limitations on the claimant's ability to work."[2] *Id.* at 16. The RFC in this case, therefore, is not flawed merely "because it does not reflexively recite the ALJ's prior finding that Gann had marked difficulties with regard to concentration, persistence, or pace." *Id.* Additionally, the ALJ was not required to defer to Dr. Marandola's opinion unqualifiedly, or give it "controlling weight," in making an RFC determination only because the ALJ gave Dr. Marandola's opinion "great weight." *Id.* (citing 20 C.F.R. § 416.927(c)(2); *Ellis v. Barnhart,* 392 F.3d 988, 995 (8th Cir.2005)). Rather, Judge Strand reiterates an essential point: "[T]he RFC must be reviewed in light of the entire record[.]" *Id.* at 16–17.

As to Gann's second argument, Judge Strand explained that the hypothetical questions posed to the vocational expert (VE), Jim van Eck, were not flawed by the ALJ's decision not to incorporate certain mental impairments discussed at step three of the ALJ's analysis.[3] *Id.* at 18–19. Quoting *Pickney v. Chater,* 96 F.3d 294, 296 (8th Cir.1996), Judge Strand found that "[b]ecause the RFC was proper, hypothetical questions based on that RFC properly addressed 'those impairments that the ALJ finds are substantially supported by the record as a whole.'" *Id.* The VE's testimony elicited by the ALJ, based on the "properly-formed hypothetical questions," was, according to Judge Strand, "substantial evidence supporting the ALJ's finding that Gann is able to

**2.** The Commissioner applies a five-step sequential analysis prescribed by the social security regulations to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. The five steps include the following: (1) the claimant conducts work for substantial gain; (2) the claimant has a severe impairment; (3) the impairment equals or exceeds a listed impairment; (4) the claimant can perform his past relevant work;

and (5) there exist other jobs in substantial numbers available for a person of the claimant's limitations. 20 C.F.R. § 404.1520(a)(4); *see also Snead v. Barnhart,* 360 F.3d 834, 836 n. 2 (8th Cir.2004).

**3.** At step three, the ALJ found that Gann has "marked difficulty maintaining concentration, persistence or pace." Tr. 17.

perform past relevant work." *Id.* at 19 (citing *Hulsey v. Astrue,* 622 F.3d 917, 922 (8th Cir.2010)). Agreeing with the Commissioner, Judge Strand also explained that the "VE testimony was not necessary at step four, as it was Gann's burden to prove that she was unable to perform past relevant work." *Id.* at 19 n. 4 (citing *Lewis v. Barnhart,* 353 F.3d 642, 648 (8th Cir.2003)). Next, citing to *Coffin v. Sullivan,* 895 F.2d 1206 (8th Cir.1990), Judge Strand took issue with Gann's misplaced reliance on *Wallace v. Bowen,* 869 F.2d 187 (3d Cir.1989), a factually distinguishable case. Tr. 19–20. In doing so, Judge Strand articulated his rationale for finding that the ALJ was not required to conduct a new hearing, even though the VE's opinions were obtained after the hearing. *Id.* at 21. This is because, unlike the claimant's attorney in *Wallace,* who objected to post-hearing reports and did not waive the right to cross-examination, Gann's attorney "did not request the opportunity to cross-examine the VE." *Id.* at 21 (citing Tr. 282–83).

Third, Judge Strand found that the ALJ's decision to discount Gann's credibility was supported by substantial evidence. Report at 25–26. In explaining his rationale as to the credibility issue, Judge Strand recited the five reasons that the ALJ provided for "concluding that Gann's subjective allegations were 'less than fully credible[.]' "[4] *Id.* at 23. Then, Judge Strand rebutted two criticisms and agreed with one criticism made by Gann in regards to the ALJ's five reasons.

Agreeing with Gann, Judge Strand found that one of the ALJ's reasons for discrediting Gann's subjective allegations as to her mental health—*i.e.,* Gann did not receive regular mental health treatment after July 2012—was *not* supported by the record. "[I]n fact, Gann saw Dr. Idahosa, a psychiatrist, on August 24, 2012, September 24, 2012, and October 22, 2012." *Id.* at 24 (citing Tr. 1157, 1159, 1161). For that reason, Judge Strand did "not consider that to be a good reason supporting the ALJ's decision to discredit Gann's subjective allegations." *Id.*

In addition, Judge Strand explained that it may be true that the ALJ erred by not accounting for some complaints by Gann to medical experts as to her lack of energy and motivation in 2011. Instead of indicating that there was "no evidence" of Gann complaining of her energy and motivation, a more accurate assessment by the ALJ would have been to indicate that there was *"little"* of such evidence. *Id.* Then again, Gann failed to object to the ALJ's statement that Gann's medication was never adjusted due to such complaints. Thus, Judge Strand found it was "not entirely inaccurate" for the ALJ to assert that Gann's "contemporaneous treatment records are not consistent with Gann's subjective allegations concerning energy and motivation." *Id.*

Disagreeing with Gann's "unsupported legal argument," Judge Strand found that the ALJ properly gave weight to a consultative examiner's (Physician Assistant (PA) James Rusch) concerns that Gann exaggerated her symptoms.[5] *Id.* at 25. Citing

---

**4.** Judge Strand listed the ALJ's five reasons for finding that Gann's subjective allegations were not credible: (1) there is no evidence that she complained of a lack of energy or motivation to any treating doctors, and no evidence that her medications were adjusted because of such complaints; (2) there is no evidence that she has difficulties performing her daily activities and those activities tend to show that she has the ability to perform work;

(3) she did not demonstrate difficulty focusing or concentrating during the hearing; (4) her limited treatment history does not support her allegations and there is no evidence that she received regular mental health treatment after July 2012; and (5) she has been described as exhibiting exaggeration during examinations. Tr. 23–24.

**5.** Although the report is signed by both PA James Rusch and Dr. Jeffrey Krohn, I agree

to *Stephens v. Shalala,* 46 F.3d 37, 39 (8th Cir.1995), Judge Strand explained that "[c]learly, a claimant's past exaggeration of impairments is an appropriate credibility factor." *Id.* Judge Strand highlighted the fact that PA Rusch's report held up to critical scrutiny the credibility of Gann's statements as to her mental health, and "provided specific examples as to how, and why, [the examiner] believes Gann exaggerated her physical symptoms, as well." *Id.* Judge Strand also took issue with the fact that Gann did not address any of the "ALJ's other reasons for discounting her credibility," such as her daily activities, or ability to focus and concentrate during the ALJ's hearing. *Id.*

## IV. GANN'S OBJECTIONS

In Gann's brief, she makes three objections to Judge Strand's R & R. Below I summarize Gann's objections, following which I discuss the issues raised by Gann's brief. Then, I provide my rationale for adopting the findings in Judge Strand's R & R.

Gann initially contends that Judge Strand erred in finding that substantial evidence supports the ALJ's decision that Gann's fibromyalgia and migraines were not "severe" impairments. Plaintiff's Objections at 8. As to the migraines, Gann argues that the ALJ erred in stating that "there is nothing in the record to show that the claimant's history of migraine headaches ... have any effect on her functioning." *Id.* at 9 (quoting Tr. 15). Citing to the record (*i.e.,* Tr. 915–939, 712, 733),

Gann argues that she sought treatment in October of 2011 for headaches, and she testified that she got "migraine headaches 'a lot.'" *Id.* (quoting Tr. 49–50). As to the fibromyalgia, Gann contends that the ALJ erred in stating that "treatment records throughout 2011 and 2012 do not refer to any specific fibromyalgia treatments." *Id.* Citing to four pages of the record (*i.e.,* Tr. 712, 731, 748, 761), Gann makes the case that fibromyalgia treatments are discussed "at various places in the record." *Id.* Gann advances her argument by contending that neither the ALJ nor Judge Strand "adequately" accounted for the evidence relating to her treatment records for migraine headaches and fibromyalgia. *Id.* Gann also contends that the "underlying decisions" did not appropriately account for the standard articulated in *Polaski v. Heckler,* 739 F.2d 1320, 1321–22 (8th Cir.1984) when considering Gann's subjective allegations to prove that her impairments were "severe."[6] *Id.* at 10.

Gann next argues that Judge Strand erred in finding that the ALJ's RFC determination and hypothetical questions to the VE were supported by substantial evidence. *Id.* at 11. The gravamen of Gann's contention is that the ALJ reached other conclusions in his decision that "conflicted" with his RFC findings and the hypothetical questions posed to the VE. *Id.* In particular, Gann focuses on the ALJ's conclusion that Gann had "marked difficulties with concentration, persistence, and pace," and the ALJ gave "great weight" to Dr. Marandola's report, but Dr. Marandola

with Judge Strand that the report appears to have been written solely by PA Rusch. This is because Dr. Krohn "did not sign off on the report" until after PA Rusch signed the report. Report at 18 (citing Tr. 293).

**6.** In quoting *Polaski,* Gann emphasizes one paragraph, in particular:

While the claimant has the burden of proving that the disability results from a medi-

cally determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced. The adjudicator may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them.
*Polaski,* 739 F.2d at 1322.

found "numerous mental health limitations and behavioral problems" with Gann. *Id.* at 11–12. According to Gann, the ALJ committed reversible error by not incorporating these mental limitations into his RFC findings, or the hypothetical questions posed to the VE. *Id.* at 12. Quoting a lengthy passage from *Pickney*, 96 F.3d at 296–97, Gann emphasizes "the importance of including all of a claimant's limitations in questioning the VE." *Id.* at 12–13. Relatedly, Gann takes issue with the ALJ's conclusion that she could work at a job with a stress level of "5"—that is, midway between the stress of a dishwasher and an air traffic controller—based on the VE's responses to the ALJ's questioning, and medical professionals' opinions from 2010 to 2012 as to Gann's ability to handle stress. *Id.* at 13. "[N]o evidence in the record," Gann argues, "supports a conclusion that [Gann] could handle that level of stress." *Id.*

Gann's final argument is that Judge Strand erred in finding that the ALJ's decision as to Gann's credibility was supported by substantial evidence. *Id.* at 14. According to Gann, "The ALJ found that Gann's testimony regarding her physical and mental limitations was not credible, to the extent that she alleged limitations that exceeded the ALJ's [RFC] assessment." *Id.* However, Gann argues that because the ALJ's RFC assessment is flawed for leaving out limitations, the credibility findings of the ALJ are also "flawed." *Id.* In

addition, Gann disagrees with the "factual bases" on which the ALJ's credibility findings rest. *Id.* She reemphasizes the points Judge. Strand made as to the ALJ's mistaken assertions that the "record contains no evidence that the claimant complained of energy and motivation to any of her treating doctors," and that Gann did not seek "mental health treatment from a psychologist or psychiatrist after July 2012." *Id.* (quoting Tr. 23); *see also* Report at 23–24. Gann also criticizes Judge Strand's conclusion that the ALJ properly relied on PA James Rusch's opinion as his opinion is "inconsistent with numerous mental health providers in the record," and PA Rusch has an obvious bias and lack of expertise as to mental health. *Id.* at 14–15. Gann also disagrees with Judge Strand's characterization of this argument as an "unsupported legal argument" because, in an earlier brief, she referred to case law indicating that the Social Security Administration should not rely on a doctor's opinion outside of his expertise. *Id.* at 15 (citing *Short v. Sullivan,* 730 F.Supp. 955, 961 (S.D. Indiana 1989)). Citing to an opinion of the Seventh Circuit Court of Appeals, *Larson v. Astrue,* 615 F.3d 744, 752, (7th Cir.2010), Gann also disagrees that her activities of daily living are incompatible with a finding of disability. *Id.* at 15–16.

Based on Gann's three objections to the R & R,[7] she requests that I "reject the

---

7. Gann's objections to Judge Strand's R & R focus on the same issues as the objections she raised with regard to the ALJ's opinion. *See, e.g.,* Plaintiff's Objections (docket no. 19); *see also* Plaintiff's Brief (docket no. 12); Plaintiff's Reply (docket no. 16). Also, many of Gann's arguments amount to requests that I reweigh the evidence. However, my role is not to "reweigh the evidence presented to the ALJ or to try the issue[s] ... de novo." *Howe v. Astrue,* 499 F.3d 835, 839 (8th Cir.2007). As the Eighth Circuit Court of Appeals has explained, "We may not reverse merely be-

cause the evidence is capable of supporting the opposite conclusion." *Hensley v. Barnhart,* 352 F.3d 353, 355 (2003) (citing *Shannon v. Chater,* 54 F.3d 484, 486 (8th Cir. 1995)); *see also Roth v. Shalala,* 45 F.3d 279, 282 (8th Cir.1995) ("If, after making this review, 'it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings, we must affirm the decision' of the Secretary." (quoting *Robinson v. Sullivan,* 956 F.2d 836, 838 (8th Cir.1992))).

Report and Recommendation, and reverse the decision of the Defendant with directions to award Supplemental Security Income benefits to [Gann]." *Id.* at 16. As an alternative, Gann requests that I "remand the case to the Social Security Administration for further proceedings." *Id.*

## V. DISCUSSION

The focal point of my inquiry is whether to accept Judge Strand's R & R that there was substantial evidence in the record to support the ALJ's decision that Gann was not disabled since March 31, 2011, the date her application for disability was filed. *See Perkins v. Astrue,* 648 F.3d 892, 897 (8th Cir.2011). In resolving this matter, I consider each issue Gann presents—namely, whether: (1) substantial evidence supports the findings of the ALJ that Gann's fibromyalgia and migraines were not "severe" impairments; (2) the ALJ's RFC determination and hypothetical questions submitted to the VE were supported by substantial evidence; and (3) the ALJ's credibility finding was supported by substantial evidence in the record.

### A. Standard Of Review

I review *de novo* the portion of the R & R to which Gann objects.[8] 28 U.S.C. § 636(b)(1)(C). The Commissioner does not raise any objections to Judge Strand's R & R. Therefore, I must "make a de novo determination" only as to the objections made by Gann. 28 U.S.C. § 636(b)(1)(C). I review the other portions of the R & R only for clear error. *See* FED. R. CIV. P. 72(b) advisory committee's note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."). Having reviewed the 1177 pages of the administrative record, I find Judge Strand's recommendations—those which were not objected to by the parties—are not clearly erroneous.

 As to the ALJ's decision to deny social security benefits, the ALJ's decision on this matter must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart,* 433 F.3d 575, 577 (8th Cir.2006) (citing *Guilliams v. Barnhart,* 393 F.3d 798, 801 (8th Cir.2005)). "Substantial evidence is 'less than a preponderance but is enough that a reasonable mind would find it adequate to support' [the Commissioner's] conclusion." *Eichelberger v. Barnhart,* 390 F.3d 584, 589 (8th Cir.2004) (quoting *Krogmeier v. Barnhart,* 294 F.3d 1019, 1022 (8th Cir.2002)). "If substantial evidence supports the ALJ's decision, [the Court] will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because [the Court] would have decided differently." *Wildman v. Astrue,* 596 F.3d 959, 964 (8th Cir.2010) (citing *McKinney v. Apfel,* 228 F.3d 860, 863 (8th Cir.2000)). The Eighth Circuit Court of Appeals has indicated that it "defer[s] heavily to the findings and conclusions of the Social Security Administration." *Hurd v. Astrue,* 621 F.3d 734, 738 (8th Cir.2010) (citing

---

8. As explained in 28 U.S.C. § 636(b)(1)(C):

A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1)(C); *see also* FED.R.CIV.P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.")

*Howard v. Massanari,* 255 F.3d 577, 581 (8th Cir.2001)).

### B. ALJ's Findings That Gann's Fibro- myalgia And Migraines Were Not Severe Impairments Are Supported By Substantial Evidence

#### 1. Legal Standard

■ The ALJ considers whether a claimant's impairment is "severe" at the second step of the ALJ's five-step analysis. According to the Eighth Circuit Court of Appeals, a "severe impairment" is defined as an impairment that " 'significantly limits [the claimant's] physical or mental ability to do basic work activities.' " [9] *Martise v. Astrue,* 641 F.3d 909, 923 (8th Cir.2011) (quoting *Pelkey,* 433 F.3d at 577). "A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms . . ." *Id.* (quoting 20 C.F.R. § 404.1508). The burden is on the plaintiff to prove that her impairment, or combination of impairments, is "severe." *See Mittlestedt v. Apfel,* 204 F.3d 847, 852 (8th Cir.2000) (citing *Wilcutts v. Apfel,* 143 F.3d 1134, 1137 (8th Cir.1998)).

■ If the impairment only amounts to a "slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities," then the impairment is "not severe." *Kirby v. Astrue,* 500 F.3d 705, 707 (8th Cir. 2007). "Severity is not an onerous requirement for the claimant to meet," the Eighth Circuit Court of Appeals has explained, "but it is also not a toothless standard, and [the appellate court] [has] upheld on numerous occasions the Com-

missioner's finding that a claimant has failed to make this showing." *Id.* at 708 (citations omitted); *see also Martise,* 641 F.3d at 924 (finding claimant's condition of migraine headaches did not constitute a severe impairment where the record was "void of any diagnostic testing"; the claimant worked during the time she sought regular treatment for her impairment and there was no medical evidence that the impairment worsened; and the claimant's impairment "responded to medication.").

#### 2. Analysis

■ I agree with the ALJ's opinion and Judge Strand's R & R that Gann has *not* met her burden of proving that her impairments of fibromyalgia and migraine headaches are "severe" impairments. *See Mittlestedt,* 204 F.3d at 852.

First, the record lacks sufficient medical evidence to support Gann's claim that her impairments "significantly" limit her ability to perform basic work activities. Report at 10; *see also Martise,* 641 F.3d at 923; *Kirby,* 500 F.3d at 707; *Marolf v. Sullivan,* 981 F.2d 976, 978 (8th Cir.1992) ("[P]roof of a disabling impairment must be supported by *at least some* objective medical evidence.") (emphasis added). Although it is true that Gann was treated for her migraine headaches and fibromyalgia, Judge Strand is correct in finding that Gann failed to demonstrate how her alleged impairments "significantly" limited her physical and mental abilities to perform basic work activities. Report at 10; *see also Martise,* 641 F.3d at 923.

Second, although not discussed by Judge Strand in his R & R, I am further con-

---

**9.** Basic work activities are defined as the "abilities and aptitudes necessary to do most jobs," including "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;" as well as "[c]apacities for seeing, hearing,

speaking;" "[u]nderstanding, carrying out, and remembering simple instructions;" using judgment, "[r]esponding appropriately to supervision, co-workers and usual work situations;" and "[d]ealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b).

vinced that Gann's fibromyalgia and migraines were not "severe" impairments because both impairments were successfully controlled with medication. *See Martise,* 641 F.3d at 924; *see also Wildman,* 596 F.3d at 965 ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling." (quoting *Brown v. Barnhart,* 390 F.3d 535, 540 (8th Cir.2004))); *Hutton v. Apfel,* 175 F.3d 651, 655 (8th Cir.1999) ("Impairments that are controllable or amendable to treatment do not support a finding of total disability."). For instance, Gann's brief, objecting to Judge Strand's R & R, provides that her migraine headaches were controlled with medication, including Topiramate, Lyrica, and Cymbalta. Plaintiff's Objections at 9 (citing Tr. 712, 733). Additionally, Gann's brief provides that her fibromyalgia was controlled with medication, including Lyrica and Cymbalta. *Id.* (citing Tr. 712, 731, 748, 761). Surprisingly, when asked at the ALJ's hearing what medications she currently takes, Gann did not indicate that she was taking any of the medications referenced in her brief to treat her migraine headaches and fibromyalgia. While indicating that she does not experience any side effects from the use of the medications prescribed by her psychiatrist, Gann suggested that the changes in her medication were attributed to an overdose.[10]

Finally, as discussed in greater detail below, the ALJ was convinced that Gann's subjective allegations as to the nature and severity of her impairments were exaggerated and unreliable. Report at 10 (Tr. 23–24). Indeed, the ALJ stressed that one consultative examiner, Dr. Douglas W.

Martin, "observed that 'every place that [he] touched' elicited pain response from [Gann]" when she was being examined for allegations of fibromyalgia. Tr. 15, 19. "Another consultative examiner questioned the legitimacy of [Gann's] pain response during an examination[.]" *Id.* at 15. The record also provides that experienced examiners, PA Rusch and Dr. Krohn, opined that Gann was an "expert manipulator," who seemed to have prepared for her consultative examination. Tr. 293. This is because Gann listed multiple mental health diagnoses and medications without error or notes, and seemed to exaggerate her impairments. Tr. 23, 293. Taking into account PA Rusch's and Dr. Krohn's report, the ALJ wrote, "Efforts to impede accurate testing and evaluation support a finding of poor credibility." Tr. 23. Reaching the same conclusion as Judge Strand, I find the evidence supports the ALJ's credibility assessment and decision to discredit Gann's subjective allegations as to her migraine headaches and fibromyalgia. For all the reasons discussed above, substantial evidence supports the ALJ's findings that Gann's fibromyalgia and migraines were not "severe" impairments.

### C. ALJ's RFC Findings And Hypotheticals To VE Are Supported By Substantial Evidence

#### 1. Legal Standard

 If it is determined by the ALJ that the claimant's impairments do not meet or equal a listed impairment, then at step four of the ALJ's five-step analysis, the ALJ will consider the claimant's RFC. *See* 20 C.F.R. § 404.1520(a)(4)(iv). A

---

**10.** It is worth mentioning here that, upon review of the facts in the record, PA Rusch's suggestion that some of Gann's complaints were contrived does not seem unreasonable. This is because Gann has a history of using multiple illicit drugs, and she was incarcerated for various violations of criminal law.

Those experiences are relevant to understand PA Rusch's report and illustrate why he believed Gann had enough institutional knowledge to be "trained" to give answers that she anticipated PA Rusch was looking for during her examination. Tr. 293.

claimant's RFC is "the most a claimant can still do despite his or her physical or mental limitations." *Martise*, 641 F.3d at 923 (quoting *Leckenby v. Astrue*, 487 F.3d 626, 631 n. 5 (8th Cir.2007)). "[S]ome medical evidence must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace[.]" *Lauer v. Apfel*, 245 F.3d 700, 703–04 (8th Cir.2001) (quoting *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir.2000) (*per curiam*); *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir.2000)) (internal citations and quotation marks omitted).

■■■■ However, "the ALJ [is] not limited to considering medical evidence...." *Id.* at 704. Rather, the ALJ must "assess[ ] a claimant's residual functional capacity based on all relevant evidence." *Guilliams*, 393 F.3d at 803 (quoting *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000)). Relevant evidence includes "medical records, observations of treating physicians and others, and an individual's own description of his limitations." *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir.2006) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir.2004) (internal quotation and citation omitted)). "[T]he burden of persuasion to prove disability and demonstrate RFC remains on the claimant." *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir.2010) (citing *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir.2004)).

In analyzing a claimant's RFC at step five, as Judge Strand rightly noted in his R & R, the Commissioner "ordinarily can rely on the testimony of a VE to show the claimant can perform other work." Report at 12 (citing 20 C.F.R. § 416.966(e); *Robson v. Astrue*, 526 F.3d 389, 392 (8th Cir.2008)). On the one hand, a VE's "testimony based on hypothetical questions that do not encompass all relevant impairments cannot constitute substantial evidence to support the ALJ's decision." *Hinchey v. Shalala*, 29 F.3d 428, 432 (8th Cir.1994) (citing *Rappoport v. Sullivan*, 942 F.2d 1320, 1323 (8th Cir.1991)). On the other hand, a VE's "testimony constitutes substantial evidence when it is based on a hypothetical that accounts for all of the claimant's proven impairments." *Hulsey*, 622 F.3d at 922 (citing *Grissom v. Barnhart*, 416 F.3d 834, 837 (8th Cir. 2005)). That is to say, the ALJ's hypothetical questions "need[ ] to include only those impairments that the ALJ finds are substantially supported by the record as a whole." *Hinchey*, 29 F.3d at 432 (citing *Stout v. Shalala*, 988 F.2d 853, 855 (8th Cir.1993)).

### 2. Analysis

■■■■ I find that the ALJ's decision that Gann retains the physical and mental RFC to perform light and medium work is supported by substantial evidence in the record.[11] Judge Strand rejected Gann's argument that a "marked limitation" found by the ALJ at step three of the sequential evaluation process must be included in the RFC findings used at steps four and five. Report at 15. As Judge Strand correctly explained, "The RFC is not simply a laun-

---

11. The ALJ determined that Gann retains the RFC to:

> [L]ift and carry 50 pounds occasionally and 25 pounds frequently, stand and walk for up to six hours, and sit for up to six hours, cumulatively. She may alternate her position every two hours. She may climb, balance, kneel, handle, and grip frequently. The claimant may frequently bend, crouch, and crawl, but she may never climb lad-

ders, ropes, or scaffolds. In addition, the claimant may have occasional contact with co-workers and supervisors. The claimant also may undertake work at a stress level of five on a scale of one to 10, one being, by example, the work of a night dishwasher, and 10 being the work of an air traffic controller (as these occupations are generally performed in the national economy.). Tr. 18.

dry list of impairments and limitations," rather, "it is an explanation of 'what [the claimant] can still do' despite his or her 'physical or mental impairments.'" *Id.* (quoting 20 C.F.R. § 404.1545(a)(1)). Thus, the ALJ, in determining Gann's RFC, appropriately considered the entire record and not merely his prior step two or three findings. In reaching the same conclusion as Judge Strand, I am persuaded by the case law that he referenced in his R & R,[12] which indicates that, even if a claimant has a severe condition, that fact alone is *not* definitive of whether the claimant is able to work. *Id.* at 15–16.

In addition, the ALJ weighed the merits of Dr. Marandola's cited limitations with the record to determine the appropriate RFC for Gann. Concurring with the ALJ's opinion and Judge Strand's R & R, I find that the ALJ resolved the seemingly conflicting statements in Dr. Marandola's report when reaching his RFC findings. While the ALJ restricted Gann to "occasional contact with co-workers and supervisors" and a lower stress level, based on Dr. Marandola's opinion, the ALJ noted that Dr. Marandola "found that [Gann] had fluent speech, a neutral mood and affect, logical, coherent and goal directed thought processes[.]" Tr. 20. "In addition, [Gann] displayed orientation (not exact as to time) and no problems with tasks testing her registration, naming, repetition, comprehension, reading, writing, and drawing[.]" Tr. 20, 435. Although Gann made "errors on serial seven calculations and recalled two out of three words after a brief interval," she could perform serial three subtractions without difficulty. Tr. 21. An ALJ assesses the RFC of a claimant based on all of the relevant evidence, which includes "medical records, observations of treating physicians and others, and claimant's own descriptions of his or her limitations." *Masterson v. Barnhart,* 363 F.3d 731, 737 (8th Cir.2004) (citation omitted). In evaluating Gann's RFC, the ALJ properly considered "all of the relevant evidence," including giving "great weight" to Dr. Marandola's opinion, before finding Gann not disabled.[13] *Id.*

Also in agreement with Judge Strand, I find that the ALJ's physical and mental RFC determinations are supported by substantial evidence in the record. In regards to Gann's physical RFC findings, the ALJ reviewed Gann's treatment records and opinion evidence from 2011 and 2012 and reasonably concluded that she could perform work at a medium or light exertional level based on such records. Tr. 18–19. "Most recently, in July 2012, [Gann] had a slow gait, but she had a 5/5 on motor strength, intact coordination, the ability to heel to toe walk without difficulty, a negative Romberg test, normal sensation, and normal reflexes," wrote the ALJ. Tr. 19.

---

**12.** *See, e.g., Griffeth v. Comm'r of Soc. Sec.,* 217 Fed.Appx. 425, 429 (8th Cir.2007) ("A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other." (quoting *Yang v. Comm'r of Soc. Sec.,* No. 00–10446–BC, 2004 WL 1765480, at *5 (E.D.Mich. July 14, 2004))); *Taylor v. Astrue,* Civil Action No. BPG–11–0032, 2012 WL 294532 (D.Md. Jan. 31, 2012) ("It is possible, therefore, for an ALJ to find at step two that a claimant's condition is severe—because the medical evidence does not conclusively prove otherwise—and yet at step four find no substantial evidence that the condition actually limits the claimant's ability to work.").

**13.** Judge Strand alluded to the important distinction between an ALJ granting "great weight" and "controlling weight" to a medical expert's opinion in his R & R. Report at 16 (citing 20 C.F.R. § 416.927(c)(2); *Ellis,* 392 F.3d at 995); *see also Martinez v. Astrue,* Civ. No. 10–5027, 2012 WL 1027637, *6 (S.D. Mar. 24, 2012) (affirming the Commissioner's decision where "[i]n arriving at the RFC, the ALJ gave 'great weight,' but not 'controlling weight' to Dr. Lawlor's opinions and 'lesser weight' to the opinions of Dr. Brady.").

The ALJ properly accounted for Gann's obesity; the ALJ noted that no evidence suggested additional physical limitations were necessary on that basis. Report at 17 (citing Tr. 19).

Concerning Gann's mental RFC findings, the ALJ thoroughly reviewed and analyzed Gann's records. The ALJ determined that, although restrictions on Gann's ability to tolerate stress were necessary, which is consistent with the ALJ's step three finding, Gann could perform work. Tr. 20–21. In analyzing the medical opinions as to Gann's mental impairments, the ALJ gave "great weight" to Dr. Marandola's opinion, and accordingly, restricted Gann's contact with co-workers and supervisors and stress level.[14] *Id.* Unlike other medical experts of record, Dr. Marandola reviewed the record at the hearing level and examined Gann. Tr. 20–22. In addition to the record indicating that Gann is not prevented from performing her daily activities based on mental

impairments, there is other evidence in the record to suggest that Gann is mentally competent. The record, for example, contains evidence that Gann can concentrate to read, watch movies, use a computer, pay bills, and count change. Tr. 17. Thus, I affirm the ALJ's physical and mental RFC findings because they are supported by "substantial evidence on the record as a whole." *Eichelberger,* 390 F.3d at 589.

Judge Strand concluded that, "[b]ecause the RFC was proper," the ALJ's hypothetical questions to the VE, which were based on the ALJ's RFC, "properly addressed 'those impairments that the ALJ [found were] substantially supported by the record as a whole.' " [15] Report at 18–19 (quoting *Pickney,* 96 F.3d at 296). I agree. To strengthen Judge Strand's finding, however, I distinguish the key cases relied upon by Gann in her objections to the R & R on this point.[16] *See* Plaintiff's Objections at 12–13. The crux of Gann's argument that the VE's hypothetical questioning should

---

**14.** As the ALJ noted, Dr. Marandola "opined that [Gann] could understand instructions, procedures, and locations with difficulty remembering them, carry out instructions with poor attention and concentration, and that she would have significant difficulty interacting appropriately with supervisors, coworkers, and the public for extended periods of time, while having a GAF of 52[.]" Tr. 20. This opinion, according to the ALJ, was consistent with the restrictions that the ALJ incorporated into his mental RFC assessment. *Id.*

**15.** Gann concedes in her initial brief and objections that the ALJ's post-hearing hypothetical question to the VE included the limitations in the ALJ's RFC findings. *See* Plaintiff's Brief at 10–11; *see also* Plaintiff's Objections at 11.

**16.** I focus my attention on *Pickney,* 96 F.3d at 296–97, and *Jelinek v. Astrue,* 662 F.3d 805, 813–14 (7th Cir.2011), as Gann quotes a long passage from *Pickney* and specifically compares *Jelinek, i.e.,* non-binding authority from the Seventh Circuit, to this case. *See* Plaintiff's Objections at 12–13. For support, Gann

also includes a string citation to *Swope v. Barnhart,* 436 F.3d 1023 (8th Cir.2006); *Grissom,* 416 F.3d at 834; *Hunt v. Massanari,* 250 F.3d 622 (8th Cir.2001); and *Ekeland v. Bowen,* 899 F.2d 719 (8th Cir.1990). *See id.* at 13. *Swope, Grissom,* and *Hunt*—cases that rely on *Pickney* and involve ALJs that erred by failing to include in hypothetical questions to VEs any reference of the claimants' "borderline intellectual functioning"—and *Ekeland*—a case involving a VE that "based her responses on an incomplete record and on hypothetical questions that failed to describe fully and precisely [the claimant's] impairments"—are distinguishable from this case. This is because, here, Gann did not establish that she had "borderline intellectual functioning," the ALJ's hypothetical was based on a "fully developed" record in accordance with 20 C.F.R. § 416.912 and, as discussed in greater detail below, the hypothetical was sufficient because it "properly reflected the impairments that the ALJ found to be supported by the record." *See* Tr. 12; *see also Prosch v. Apfel,* 201 F.3d 1010, 1015 (8th Cir.2000).

have reflected additional mental limitations seems to rest on two mistaken beliefs: (1) the ALJ erred by not incorporating certain limitations from Dr. Marandola's opinion into the ALJ's RFC findings and the resulting hypothetical question to the VE; and (2) the ALJ's RFC findings, and the resulting hypothetical question to the VE, needed to reflexively recite the ALJ's prior finding that Gann had marked difficulties with regard to concentration, persistence, or pace. *Id.* at 11–12. While I addressed the weight the ALJ gave to Dr. Marandola's opinion above and found that the ALJ properly considered "all of the relevant evidence" in making his proper RFC findings, *Masterson*, 363 F.3d at 737, I turn now to explain the aptness of the ALJ's hypothetical questions to the VE, in particular, hypothetical question number fifteen, which incorporates Gann's RFC.[17]

In her objections, Gann refers to *Pickney*, 96 F.3d at 296–97, to illustrate "the importance of including all of a claimant's limitations in questioning the VE." *Id.* at 12. In *Pickney*, the Eighth Circuit Court of Appeals reversed and instructed the district court to remand to the Commissioner for further proceedings as the ALJ "failed to include [the claimant's] mental impairments in the hypothetical question posed to the vocational expert." *Pickney*, 96 F.3d at 295. In reaching that holding, the Eighth Circuit Court of Appeals noted that "the ALJ acknowledged that [the claimant] has mental impairments and that

finding is supported by objective evidence—the I.Q. scores." *Id.* at 296. The appellate court continued: "The ALJ did not merely fail to mention the mental impairment, *he expressly directed the vocational expert to assume that [the claimant] had no mental impairments.*" *Id.* at 296–97 (emphasis added). Thus, in *Pickney*, the ALJ's denial of benefits was reversed because the ALJ expressly excluded proven mental impairments from the VE's hypothetical. *Id.* at 297.

According to Gann, the ALJ's hypothetical question here was also similar to the hypothetical posed in *Jelinek*, 662 F.3d at 813–14. This is because the ALJ's question, Gann argues, was "largely related to physical limitations," and the ALJ did not adequately account for Gann's mental health limitations. *See* Plaintiff's Objections at 13; *see also* Plaintiff's Brief at 13. In *Jelinek*, the Seventh Circuit Court of Appeals reversed the district court's judgment and remanded the case to the Social Security Administration for further proceedings as the ALJ did not include all of the "physical and mental limitations the judge deem[ed] credible" in the ALJ's hypothetical question posed to the VE. *Jelinek*, 662 F.3d at 813. The hypothetical posed by the ALJ did not reflect the impact of the claimant's mental impairments, which "limited [the claimant's] ability to maintain regular work attendance, to carry out instructions, and to deal with the

---

**17.** Reflecting the ALJ's physical and mental RFC determinations, Tr. 18, the ALJ's hypothetical question number fifteen to the VE was:

Hypothetical person number one can lift and carry up to fifty (50) pounds occasionally, twenty-five (25) pounds frequently. This person can stand and walk up to six (6) hours and sit up to six (6) hours, cumulatively. This person may alternate position every two hours. This person may climb, balance, kneel, handle and grip on a fre-

quent basis. This person may frequently bend, crouch, crawl, but never climb ladders, ropes and scaffolds. *This person may have occasional contact with co-workers and supervisors. This person may undertake work at a stress level of five (5) on a scale of one to ten, one being, by example the work of a night dishwasher, and ten (10) being the work of an air traffic controller, as these occupations are generally performed in the national economy.*

Tr. 274 (emphasis added).

stresses of full-time employment." *Id.* at 814.

I disagree with Gann's attempt to liken this case to either *Pickney* or *Jelinek*. Unlike *Pickney*, the ALJ in this case did *not* specifically state in his hypothetical that Gann did not have "any mental limitations" while Gann had "borderline intellectual functioning" with serious vocational limitations. *See Pickney*, 96 F.3d at 295 n. 1, 297. Rather, in this case, the ALJ's hypothetical question included the physical and mental limitations that the ALJ deemed credible. Gann also did not establish that she is in the category of "borderline intellectual functioning,"[18] like the claimant in *Pickney*. Also, the ALJ's hypothetical question in *Jelinek*, which did not refer to the claimant's inability "to maintain regular attendance, perform at a consistent pace, or deal with normal work stresses," is distinct from the ALJ's hypothetical here. *Jelinek*, 662 F.3d at 810. This is because the ALJ's hypothetical, in this case, reflects, in part, that Gann's mental limitations affect her ability to deal with the stresses of full-time employment. Tr. 274.

Notably, distinct from the hypotheticals posed in *Pickney* and *Jelinek*,[19] the ALJ's hypothetical question, here, was consistent with the ALJ's prior findings, included limitations that accounted for Gann's credible mental impairments, and described the consequences of her credible mental impairments. This is because the ALJ posed a hypothetical that limited Gann to "a stress level of five," and indicated that "[t]his person may have occasional contact with co-workers and supervisors."[20] Tr.

18. "Borderline intellectual functioning is a condition defined as an IQ score within the 71–84 range while mental retardation is a score of about 70 or below." *Hutsell v. Massanari*, 259 F.3d 707, 709 n. 3 (8th Cir.2001). The Eighth Circuit Court of Appeals has consistently " 'concluded that borderline intellectual functioning, if supported by the record ... is a significant nonexertional impairment that must be considered by a vocational expert.' " *Grissom*, 416 F.3d at 837 (8th Cir. 2005) (quoting *Lucy v. Chater*, 113 F.3d 905, 908 (8th Cir.1997)); *cf. Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir.2008) (indicating that "the ALJ was not required to present [the claimant's] limited mental capacity to the vocational expert," where there was substantial evidence that the claimant did not "exhibit borderline intellectual functioning," but recognizing that "a claimant's borderline intellectual functioning must be included in the hypothetical to the vocational expert[.]") (citation omitted).

19. In *Pickney*, the ALJ's hypothetical question was:

Let me ask you this—assuming that I find that he doesn't actually experience any mental limitations other than—well, the hypothetical didn't include any so let me ask you to assume that I would find that he didn't experience any mental limitations and that the only restrictions he would have would be those related to his age and education. What period of vocational adjustment, if any, would be necessary then?

*Pickney*, 96 F.3d at 297 (emphasis added). Thus, no mental impairment, or any concrete consequences of such impairments, were suggested by the ALJ's hypothetical question in *Pickney*. In *Jelinek*, according to the Northern District of Indiana, the ALJ initially "asked the vocational expert to consider a hypothetical individual who was the same age as *Jelinek*, had the same education and work background and was limited to performing light, unskilled work." *Jelinek v. Astrue*, Case No. 3:09–CV–368, 2010 WL 3075024, *3 (N.D.Ind. Aug. 2, 2010). The court continued: "The second hypothetical question asked the vocational expert to consider an individual with *Jelinek*'s age, education and work background but who was limited to sedentary, unskilled work." *Id.* Thus, similar to the hypothetical question posed in *Pickney*, no mental impairments, or any concrete consequences of such impairments, were suggested by the ALJ's hypothetical questions in *Jelinek*.

20. Even Gann's previous attorney, Al Sturgeon, noted in a letter to the ALJ, dated January 25, 2013, that these two factors were "non-physical." Tr. 282.

274. The ALJ discussed other opinions, such as the opinion of Michael Baker, Ph. D.,[21] that supported the capabilities and limitations the ALJ incorporated into Gann's mental RFC. Tr. 21. Therefore, unlike the ALJ in *Pickney* and *Jelinek*, the ALJ in this case accounted for some degree of mental impairment for Gann. *See Hulsey*, 622 F.3d at 922 (distinguishing *Pickney* from *Hulsey* where the ALJ's hypothetical "limited [the claimant] to 'work of an unskilled nature involving only superficial interpersonal contact,'" and so, the court reasoned that the ALJ's hypothetical "accounted for some degree of mental impairment."); *see also McKinney*, 228 F.3d at 865 (recognizing that "[t]estimony from a vocational expert is substantial evidence only when the testimony is based on a correctly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies." (quoting *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir.1997))).[22] The ALJ's hypothetical also properly "limited the universe of work" that Gann can perform based on her credible mental impairments. *Hulsey*, 622 F.3d at 922. The ALJ "properly excluded the alleged impairments from the hypothetical question" that were not supported

by the record, or accepted as valid by the ALJ. *McKinney*, 228 F.3d at 865; *see also Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir.2001) ("The ALJ's hypothetical question properly included all impairments that were accepted by the ALJ as true and excluded other alleged impairments that the ALJ had reason to discredit.").

Finally, it is unnecessary for me to address the alleged procedural error that Gann asserted in her initial brief. *See* Plaintiff's Brief at 13–14. This is because, after reviewing the additional case law cited by Judge Strand—presumably, *Coffin*, 895 F.2d at 1212—Gann decided not to "pursue her prior argument that questioning of the VE was also flawed from a procedural standpoint." *Id.* at 13 n. 2. For clarity's sake, I note my agreement with Judge Strand that a supplemental hearing was *not* required as Gann's former attorney, Al Sturgeon, was provided the opportunity to respond to the post-hearing evidence. Report at 21. Yet, Gann's former attorney did not seek to cross examine the VE when the opportunity arose. Tr. 282–83; *see also Coffin*, 895 F.2d at 1212. Instead, as Judge Strand noted in his R & R, "[Gann's attorney] highlighted the al-

---

21. In the words of the ALJ,

> Dr. Baker observed that the claimant had good eye contact, normal speech, full cooperation, appropriate affect and a normal mood, no suicidal ideation (with a noted history of such), and no hallucinations (Exhibit 1F, p. 2). The claimant also recalled three out of four items after five minutes and subtracted threes from 20 without difficulty, and she had a good fund of knowledge, low average intellectual functioning, correct calculations on arithmetic problems at a slow pace, and a correct spelling of "world" backwards, while having problems with serial sevens (Exhibit 1F, p. 3). Further, the claimant showed full orientation and alertness, good memory and recall, fair concentration, and no significant impairment in insight and judgment (*Id.*).

Tr. 21–22.

22. The facts of *Hulsey* are arguably stronger for the plaintiff than the facts for Gann in this case. This is because, in *Hulsey*, the plaintiff was restricted by "borderline intellectual functioning" and other serious mental impairments, including anxiety, depression, and a somatoform disorder. *Hulsey*, 622 F.3d at 921–22, 925. Hulsey was also treated for carpal tunnel syndrome, hypertension, and headaches. *Id.* at 919. All that said, while Gann does not fall into the category of "borderline intellectual functioning," the ALJ found her to have the following severe impairments: obesity, post-traumatic stress disorder, bipolar I disorder, attention deficit hyperactivity disorder, borderline personality disorder, and antisocial personality disorder. Tr. 14.

leged flaws in the VE's answers and noted that the VE had not had the benefit of hearing Gann's testimony." [23] Report at 21 (citing Tr. 282–83). Thus, Judge Strand was right in deciding that Gann's procedural due process argument fails.

### D. ALJ's Decision To Discredit Gann Is Supported By Substantial Evidence

#### 1. Legal Standard

"The ALJ is in the best position to gauge the credibility of testimony and is granted deference in that regard." *Schultz v. Astrue,* 479 F.3d 979, 982 (8th Cir.2007) (quoting *Estes v. Barnhart,* 275 F.3d 722, 724 (8th Cir.2002)). Moreover, as Judge Strand explained, "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Report at 22 (quoting *Pearsall,* 274 F.3d at 1218). "Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole." *Polaski,* 739 F.2d at 1322. In evaluating a claimant's credibility, the ALJ must look to the factors enumerated in *Polaski:* (1) the claimant's daily activities; (2) the duration, frequency, and intensity of pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions. *See Finch,* 547 F.3d at 935 (citing *Polaski,* 739 F.2d 1320, 1322 (8th Cir.1984)). "Other relevant factors include the claimant's relevant work history and absence of objective medical evidence to support the complaints." *Mouser v. Astrue,* 545 F.3d 634, 638 (8th Cir.2008) (quoting *Wheeler v. Apfel,* 224 F.3d 891, 894 (8th Cir.2000)).

#### 2. Analysis

In this case, the ALJ *did* err in discrediting Gann's assertions that she complained of a lack of energy and motivation to medical experts and that she received regular medical health treatment after July 2012. Upon review of the record, one would be hard pressed to disagree with Gann (or Judge Strand) on these points. As Judge Strand readily made clear, Gann complained of a lack of energy and motivation on May 2, 2011, and completed a questionnaire on December 8, 2011, which indicated that she feels tired or has little energy "[n]early every day." Tr. 503, 713–714. Accordingly, the ALJ was incorrect in his assessment of Gann's complaints of a lack of energy and motivation. Be that as it may, Judge Strand is right that Gann did not object to the ALJ's finding that Gann's medication was never altered to treat her lack of energy or motivation. Report at 24. In addition, contrary to the ALJ's assertion, Gann received treatment for her mental health on three occasions subsequent to July 2012. *Id.* (citing Tr. 1157, 1159, 1161). Therefore, the ALJ erred in indicating that Gann did not receive regular mental health treatment after July 2012.

Despite the factual inaccuracies in the ALJ's opinion, recognized by Judge Strand, which weigh in Gann's favor, I find those errors to be harmless because there is "no indication that the ALJ would have decided differently" the issue of Gann's credibility. *Van Vickle v. Astrue,* 539 F.3d 825, 830 (8th Cir.2008) ("There is no indication that the ALJ would have decided differently had he read the hand-written notation to say 'walk' rather than 'work,'

---

**23.** Gann's former counsel merely wrote the following in his correspondence to the ALJ, dated January 25, 2013: "I would like to respond to the questions answers [sic] by Mr. VanEck [sic]. Rather than send additional interrogatories to him, and in the interest of time, we will simply substitute those interrogatories for comments regarding Mr. VanEck's [sic] opinion." Tr. 282.

and any error by the ALJ was therefore harmless."). Further, I also agree with Judge Strand that the "reasons supplied by the ALJ for discounting Gann's credibility are valid factors supported by substantial evidence." Report at 26. The ALJ articulated several reasons to support its credibility finding: (1) Gann's daily activities were inconsistent with her complaints; (2) Gann's capabilities at the ALJ's hearing were inconsistent with her complaints; and (3) a report signed by James Rusch, a PA, and Jeffrey Krohn, M.D., raised serious issues about Gann's credibility. *See* Tr. 23–24.

As to Gann's daily activities, the ALJ discredited Gann's complaints based on the fact that "she walks to the library, takes the bus, attends appointments, and showers and dresses[.]" Tr. 24. Put simply, the record reflects that Gann is able to care for herself. The ALJ was also further convinced that Gann's subjective complaints were not credible based on other activities she performs, such as doing chores, attending meetings and church services, shopping, and occasionally going to temporary work agencies. *Id.* Gann also indicated that she does not have difficulty washing or bathing herself. *Id.* Aside from the activities mentioned, the record also provides that, during the time of her alleged disability, Gann enjoyed "hanging with her mother or boyfriend ... writing, listening to music, walking, swimming, and biking." Tr. 434; *see also Craig v. Apfel,* 212 F.3d 433, 436 (8th Cir.2000) (finding fact that claimant "continues to engage in many normal daily living activities including driving, shopping, visiting with friends and relatives, and picking up her grandchild" supports finding of ability to work.). Finally, as to the ALJ's observations of Gann at her administrative hearing, Gann showed no signs of difficulty focusing or concentrating. *See* Report at 26 ("While an ALJ's observations cannot be the *sole* basis of his or her decision, 'it is not an

error to include his observations as one of several factors.'" (quoting *Lamp v. Astrue,* 531 F.3d 629, 632 (8th Cir.2008))). Nor did Gann complain about lacking energy or motivation during the administrative hearing. Tr. 40–63.

All of the above factors support the ALJ's adverse credibility finding as to Gann. These factors suggested to the ALJ, as Judge Strand rightly pointed out, that "Gann has greater physical and mental capabilities than she alleges." Report at 26 (citing Tr. 24); *see also Heino v. Astrue,* 578 F.3d 873, 881 (8th Cir.2009) ("'Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility.'" (quoting *Johnson v. Apfel,* 240 F.3d 1145, 1148 (8th Cir.2001))). Therefore, agreeing with Judge Strand's recommendation, I find it is appropriate for me to give deference to the ALJ's proper credibility assessment and find that Gann has the ability to perform work. *See Schultz,* 479 F.3d at 983 ("We will defer to an ALJ's credibility finding as long as the 'ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so.'" (quoting *Hogan v. Apfel,* 239 F.3d 958, 962 (8th Cir.2001) (quoting *Dixon v. Sullivan,* 905 F.2d 237, 238 (8th Cir. 1990)))). The ALJ's conclusion that Gann is "capable of performing past relevant work as a Certified Nursing Assistant, Laborer, Bus Person, Housekeeper, Fast Food Worker, and Newspaper Carrier" is supported by substantial evidence. Tr. 24.

In reaching this conclusion, I do not overlook Gann's citation to *Short,* 730 F.Supp. at 961, in support of the argument that "the SSA should not rely on doctor's [sic] opinions which are outside of their scope of expertise." Plaintiff's Objections at 15. In *Short,* a doctor "stepped out of his realm of expertise and expressed an opinion on a vocational issue," and thus,

"the ALJ was entitled to discount this report in favor of other evidence." *Short*, 730 F.Supp. at 961. More specifically, the doctor "render[ed] an opinion as to the availability of jobs for a person with one arm." *Id.* The ALJ was aware of the report and noted that it "was not accompanied by supporting clinical findings." *Id.* According to Gann, PA Rusch was "not qualified to render an opinion as to whether [Gann's] reported mental health issues and symptoms were legitimate or not[.]" Plaintiff's Objections at 15. For that reason, Gann argues, "The ALJ's credibility conclusions are not supported by the record." *Id.* I reject this argument.

In Judge Strand's R & R, he cites to *Stephens*, 46 F.3d at 39, in support of the proposition that "[c]learly, a claimant's past exaggeration of impairments is an appropriate credibility factor." Report at 25; *see also Jones v. Astrue*, 619 F.3d 963, 973 (8th Cir.2010) ("Given Dr. Erby's comments about 'probable dramatic exaggeration of anxiety,' '[t]he ALJ was entitled to draw conclusions about [Jones's] credibility based on [Dr. Erby's observation] indicating that [Jones] was exaggerating symptoms...'") (quoting *Baker v. Barnhart*, 457 F.3d 882, 892 (8th Cir.2006)). In *Stephens*, the ALJ correctly supported his determination that the claimant's testimony was not credible in part because of the claimant's "history of exaggerating physical impairments." *Stephens*, 46 F.3d at 39. While PA Rusch readily admits that he is not "an expert in mental health," he opines that Gann "seems to want to exaggerate her impairments." Tr. 293.

Distinct from the unsupported report in *Short*, PA Rusch's report includes supportive examples regarding Gann's attempt to exaggerate her mental and physical symptoms and PA Rusch's rationale for believing Gann is exaggerating her symptoms. Tr. 293. To cite a few examples, in regards to Gann's physical health, Gann claimed to have carpal tunnel syndrome to PA Rusch. Yet, Gann denied any problems handling objects, which is a most comment complaint of patients suffering from carpal tunnel syndrome. Tr. 293. Also, according to PA Rusch, Gann's "ranges of motion are fairly normal, her strength is normal and her gait is normal." Tr. 293. In regards to Gann's mental health, PA Rusch explained that Gann seemed to have "studied" for her evaluation as she easily recited "mental health diagnoses and medication lists without error or notes." Tr. 293. Even assuming, *arguendo*, that PA Rusch's expressed concerns regarding the validity of Gann's mental impairments should not have been considered by the ALJ, I am not persuaded that the ALJ's credibility conclusion is unsupported by the record for all of the other reasons discussed above.

## VI. CONCLUSION

Based on my analysis, and in accordance with Judge Strand's well-crafted R & R, I affirm the ALJ's decision. I find that the ALJ's decision that Gann was not disabled since March 31, 2011, the date her application for benefits was filed, is supported by substantial evidence in the record. Although Gann's condition does cause her limitations in the type of work that she can perform, as the ALJ and Judge Strand pointed out, Gann is not disabled. Tr. 15. I find the objections filed by Gann regarding Judge Strand's R & R to be unpersuasive for the reasons provided. Accordingly, the Clerk shall enter judgment in the Commissioner's favor and against Gann.

**IT IS SO ORDERED.**

## REPORT AND RECOMMENDATION

LEONARD T. STRAND, United States Magistrate Judge.

Plaintiff Bonnie Jean Gann seeks judicial review of a final decision of the

Commissioner of Social Security (the Commissioner) denying her application for Supplemental Security Income benefits (SSI) under Title XVI of the Social Security Act, 42 U.S.C. § 401 *et seq.* (Act). Gann contends that the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision that she was not disabled during the relevant period of time. For the reasons that follow, I recommend that the Commissioner's decision be affirmed.

### I. BACKGROUND

Gann was born in 1980 and has a high school diploma. AR 42–44. She has past relevant work as certified nursing assistant, laborer, bus person, housekeeper, fast food worker and newspaper carrier. AR 278. She applied for SSI on March 31, 2011. AR 156–64. Her application was denied initially and on reconsideration. AR 83–90, 96–106. Gann then requested a hearing before an Administrative Law Judge (ALJ) and on November 20, 2012, ALJ James D. Goodman held a hearing during which Gann testified. AR 32–65. At the conclusion of the hearing, the ALJ left the record open to allow Gann to submit additional evidence. AR 12. The ALJ also directed written interrogatories to Jim van Eck, a vocational expert (VE). *Id.* The VE submitted answers to the interrogatories on December 10, 2012. AR 278–79. The ALJ then forwarded those answers to Gann's counsel and invited a response. AR 280. Gann's counsel submitted a written response on January 25, 2013. AR 282–83.

On February 7, 2013, the ALJ issued a decision finding Gann was not disabled since March 31, 2011, the date her application was filed. AR 12–25. Gann sought review of this decision by the Appeals Council, which denied review on January 24, 2014. AR 1–6. The ALJ's decision thus became the final decision of the Com-

missioner. AR 1; *see also* 20 C.F.R. § 416.1481.

On March 26, 2014, Gann filed a complaint (Doc. No. 3) in this court seeking review of the Commissioner's decision. This matter has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) for the filing of a report and recommended disposition of the case. The parties have briefed the issues and the matter is now fully submitted.

### II. DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists ... in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue,* 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant

has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir.2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir.2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir.1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one

of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir.2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358–59 n. 5 (8th Cir.2000). The Commissioner must show not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant num-

bers in the national economy. *Eichelberger v. Barnhart,* 390 F.3d 584, 591 (8th Cir.2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart,* 377 F.3d 801, 806 (8th Cir.2004).

### III. ALJ'S FINDINGS

The ALJ made the following findings:

(1) The record contains no evidence that the claimant engaged in substantial gainful activity since March 31, 2011, the application date (*see,* e.g. Exhibit 3D) (20 CFR 416.971 *et seq.*).

(2) The claimant has the following severe impairments: obesity (Exhibit 9F, p. 4), post-traumatic stress disorder (Exhibit 8F, p. 6; Exhibit 32F, p. 6); bipolar I disorder (Exhibit 1F, p. 3; Exhibit 8F, p. 6; Exhibit 32F, p. 6), attention deficit hyperactivity disorder (ADHD) (Exhibit 8F, p. 6; Exhibit 32F, p. 6), borderline personality disorder (Exhibit 8F, p. 6; Exhibit 32F, p. 6), and antisocial personality disorder (Exhibit 8F, p. 6) (20 CFR 416.920(c)).

(3) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

(4) After careful consideration of the entire record, I find that the claimant has the residual functional capacity to lift and carry 50 pounds occasionally and 25 pounds frequently, stand and walk for up to six hours, and sit for up to six hours, cumulatively. She may alternate her position every two hours. She may climb, balance, kneel, handle, and grip frequently. The claimant may frequently bend, crouch, and crawl, but she may never climb ladders, ropes, or scaffolds. In addition, the claimant may have occasional contact with co-workers and supervisors. The claimant also may undertake work at a stress level of five on a scale of one to 10, one being, by example, the work of a night dishwasher, and 10 being the work of an air traffic controller (as these occupations are generally performed in the national economy).

(5) The claimant is capable of performing past relevant work as a Certified Nursing Assistant, Laborer, Bus Person, Housekeeper, Fast Food Worker, and Newspaper Carrier. This work does not requires the performance of work-related activities precluded by the claimants residual functional capacity (20 CFR 416.965).

(6) The claimant has not been under a "disability," as defined in the Social Security Act, since March 31, 2011, the date the application was filed (20 CFR 416.920(g)).

AR 14–25.

### IV. THE SUBSTANTIAL EVIDENCE STANDARD

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart,* 433 F.3d 575, 577 (8th Cir.2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . .").

"Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir.1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not reweigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir.2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir.2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir.2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir.1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir.1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir.1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir.1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir.1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir.1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir.1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir.2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## V. DISCUSSION

Gann raises the following arguments in contending that the ALJ's decision is not supported by substantial evidence:

(1) The ALJ erred in finding that Gann's migraine headaches and fibromyalgia were not severe impairments.

(2) The ALJ's determination of Gann's RFC, along with the hypothetical questions he submitted to the VE, are not supported by substantial evidence on the record as a whole.

(3) The ALJ erred by discrediting Gann's subjective allegations.

I will address these arguments separately.

### A. Migraine Headaches and Fibromyalgia

#### 1. Applicable Standards

At Step Two, the ALJ must consider whether a medically determinable impairment is "severe." 20 C.F.R. § 416.920(a)(4)(ii). A severe impairment is one which "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c).

Basic work activities include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; capacities for seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 416.921(b). If the impairment would have no more than a minimal effect on the claimant's ability to work, it is not severe. *Page,* 484 F.3d at 1043.

It is the claimant's burden to establish that his or her impairment or combination of impairments is severe. *Mittlestedt v. Apfel,* 204 F.3d 847, 852 (8th Cir.2000). "Severity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard...." *Kirby,* 500 F.3d at 708 (internal citation omitted). When a claimant has multiple impairments, "the Social Security Act requires the Commissioner to consider the combined effect of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient medical severity to be disabling." *Cunningham v. Apfel,* 222 F.3d 496, 501 (8th Cir.2000).

In determining the severity of a medically determinable impairment, the ALJ must consider a claimant's symptom-related limitations and make a credibility finding on his or her alleged limitations. *See Caviness v. Massanari,* 250 F.3d 603, 605 (8th Cir.2001) (the ALJ erred at Step Two by failing to evaluate the claimant's subjective complaints); *see also* SSR 96–7p, 1996 WL 374186 (July 2, 1996). While the ALJ may conclude that the medical evidence does not support a claimant's subjective allegations, this is only one factor that should be considered. *See Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir.1984) ("The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints."). The ALJ is required to explicitly discredit a claimant and provide reasons. *See Wagner v. Astrue,* 499 F.3d 842, 851 (8th Cir.2007) ("[A]n ALJ who rejects such [subjective] complaints must make an express credibility determination explaining the reasons for discrediting the complaints").

### 2. *The ALJP's Findings*

The ALJ discussed migraine headaches only briefly, noting that Gann has a history of suffering from them but finding that there is nothing in the record to indicate that they have any effect on her functioning. AR 15. With regard to fibromyalgia, the ALJ referenced a consultative examination conducted in June 2011 by Douglas W. Martin, M.D. AR 15 (citing AR 439–45). The ALJ noted that Dr. Martin found Gann to be positive for pain at all 18 tender points used to assess fibromyalgia. *Id.* (citing AR 441). However, the ALJ also pointed out that according to Dr. Martin, Gann "complained of significant pain" every place he touched Gann. *Id.* The ALJ also stated that another consultative examiner had questioned the credibility of Gann's pain response during a prior examination. *Id.* (citing AR 293). That examiner had rather bluntly referred to Gann as an "expert manipulator" who appeared to have studied for the consultative examination. AR 293. Finally, the ALJ referenced Gann's treatment records from 2011 and 2012 and found they do not support Gann's claim that fibromyalgia is a severe impairment. AR 15.

### 3. *Analysis*

Gann disputes the ALJ's finding that there is nothing in the record to indicate that migraine headaches or fibromyalgia have any effect on her ability to function. Gann cites treatment records from 2011

and 2012 which indicate that she received treatment for these conditions. Doc. No. 12 at 9–10; Doc. No. 16 at 2–3. Gann also relies on her own testimony that she suffers from migraines "a lot." Doc. No. 12 at 9. The Commissioner argues that the ALJ's finding is correct because while the record reflects that Gann sometimes sought treatment for migraines and fibromyalgia, Gann did not attempt to show that these conditions significantly impair her ability to perform work functions. Doc. No. 13 at 6–8.

The Commissioner has the better argument. Simply pointing to instances in which Gann was treated for migraines and fibromyalgia, or stating that migraines occurred "a lot," does not demonstrate that these conditions significantly limited Gann's physical or mental ability to do basic work activities. Moreover, while the ALJ did not undertake an express credibility analysis at Step Two, he did so later in his decision and provided several reasons for concluding that Gann's subjective allegations are exaggerated. AR 23–24. As I will discuss further, *infra*, I find that the ALJ's credibility assessment is supported by substantial evidence on the record as a whole.

In short, the ALJ (a) correctly concluded that the medical evidence did not demonstrate that migraine headaches and fibromyalgia significantly limited Gann's ability to perform work activities and (b) properly discredited Gann's subjective allegations about those impairments. As such, the ALJ did not err at Step Two by concluding that migraine headaches and fibromyalgia are not severe impairments.

### B. The RFC and Hypothetical Questions

#### 1. Applicable Standards
##### a. The RFC Determination

At Step Four, the claimant has the burden to prove his or her RFC. *Harris v.* *Barnhart*, 356 F.3d 926, 930 (8th Cir.2004). The claimant's RFC is "what [the claimant] can still do" despite his or her "physical or mental limitations." 20 C.F.R. § 404.1545(a)(1). The ALJ must determine RFC "based on all the relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of her limitations." *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir.2010) (citing *Page*, 484 F.3d at 1043). RFC is a medical question, meaning the ALJ's assessment must be supported by "some medical evidence" of the claimant's ability to function in the workplace. *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir.2001). "It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government if they are inconsistent with the record as a whole." *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir.2001).

#### b. Hypothetical Questions to the VE

As noted earlier, the question at Step Four is whether the claimant has the RFC to perform past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). Because the claimant bears the burden of proof on this issue, VE testimony is not required. *Lewis*, 353 F.3d at 648. If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled and the analysis does not proceed to Step Five. 20 C.F.R. § 416.920(a)(4)(iv).

If the analysis reaches Step Five, the Commissioner ordinarily can rely on the testimony of a VE to show the claimant can perform other work. 20 C.F.R. § 416.966(e); *Robson v. Astrue*, 526 F.3d 389, 392 (8th Cir.2008). Such testimony "constitutes substantial evidence when it is based on a hypothetical that accounts for

,all of the claimant's proven impairments." *Hulsey v. Astrue,* 622 F.3d 917, 922 (8th Cir.2010). The hypothetical question must include "those impairments that the ALJ finds are substantially supported by the record as a whole." *Pickney v. Chater,* 96 F.3d 294, 296 (8th Cir.1996). "[A]n ALJ may omit alleged impairments from a hypothetical question posed to a vocational expert when '[t]here is no medical evidence that those conditions impose any restrictions on [the claimant's] functional capabilities.'" *Owen v. Astrue,* 551 F.3d 792, 801–02 (8th Cir.2008) (quoting *Haynes v. Shalala,* 26 F.3d 812, 815 (8th Cir.1994)). Thus, to obtain valid VE testimony about a claimant's ability to perform other work, the hypothetical questions posed to the VE should mirror the limitations described in a properly-formulated RFC.

### 2. The Parties' Arguments

Gann raises two primary issues. First, she argues that the ALJ's findings about her mental RFC improperly contradicted certain of his other findings. Specifically, she points out that in the process of determining whether her mental impairments met or medically equaled the "paragraph B" criteria of listings 12.02, 12.04, 12.06 and 12.08, the ALJ found that she had marked difficulties with regard to concentration, persistence or pace. Gann also notes the ALJ afforded great weight to the opinion of Denise Marandola, Ph.D., a consultative examiner, and that her opinion included findings that Gann has poor memory, was highly volatile and could not handle money. AR 20, 436. Gann contends that the ALJ erred by not incorporating these mental limitations into the RFC.

Second, Gann argues that these alleged omissions in the RFC infected the hypothetical written questions posed to the VE after the hearing, as those questions did not include proven mental impairments. She contends that when her then-counsel [1] brought this issue to the ALJ's attention, the ALJ should have conducted another hearing to allow cross-examination of the VE. In any event, Gann argues that the VE's testimony cannot constitute substantial evidence because the hypothetical questions were flawed.

With regard to Gann's first argument, the Commissioner denies that any actual inconsistencies exist. As for the ALJ's Step Three [2] finding that Gann had marked difficulties with regard to concentration, persistence or pace, the Commissioner notes that the Step Three analysis differs from the RFC analysis. Indeed, the Commissioner appears to argue that findings made at Step Three are not relevant to the formulation of a claimant's RFC. The Commissioner also argues that the ALJ did, in any event, account for those marked limitations in the RFC.

As for Dr. Marandola's opinion, the Commissioner contends that even upon affording it great weight, the ALJ was not required to reflexively adopt it in its entirety. Instead, the Commissioner contends that the ALJ correctly weighed that opinion against other evidence of record and explained how he reconciled inconsistencies. In short, the Commissioner argues that the ALJ's determination of Gann's RFC is supported by substantial evidence, notwithstanding any alleged inconsistencies.

---

1. Gann's counsel of record in this case was not the attorney who represented her during the ALJ's proceedings.

2. Both parties refer to this as a Step Two finding. Doc. No. 13 at 8–9; Doc. No. 16 at 3–4. The ALJ made the finding at Step Three, when considering whether Gann has a listed impairment. AR 16–18.

In response to Gann's second argument, the Commissioner points out Gann's arguments are not material because VE opinion evidence is not necessary at Step Four. The Commissioner also denies that the ALJ committed procedural error in failing to conduct another hearing after the VE submitted answers to the post-hearing interrogatories. The Commission argues that such a hearing was not required and, in any event, that Gann failed to request it.

### 3. Analysis

#### a. The RFC Determination

I will first address Gann's arguments that the ALJ's assessment of her RFC is flawed because it is inconsistent with (a) his own Step Three findings and (b) Dr. Marandola's opinion. I will then discuss the ultimate question of whether the RFC, as formulated by the ALJ, is supported by substantial evidence on the record as a whole.

#### i. The Step Three Findings

In considering whether Gann has a listed mental impairment, the ALJ found that she had marked difficulties with regard to concentration, persistence or pace and explained that a "marked" limitation means "more than moderate but less than extreme." AR 17. The ALJ also stated that the "Paragraph B" mental assessment findings are limited to the ratings at Steps Two and Three of the sequential evaluation process and are not part of the RFC assessment. AR 18. Gann alleges that this creates an internal inconsistency in the ALJ's analysis and contends that when a marked limitation is found at Step Two or Step Three, that limitation must be accounted for in the RFC. Doc. No. 12 at 3–4. Gann cites no authority for this proposition.

Meanwhile, the Commissioner cites only one authority to argue that "Paragraph B" findings are "limited to" Step Two and Step Three and are not part of the RFC

assessment. Doc. No. 13 at 9 (citing SSR 96–8p, 1996 WL 374184, at *2). The specified page of the referenced ruling includes only a general discussion of the RFC assessment. It does not state that findings made at Step Two or Step Three are irrelevant to the RFC determination. Indeed, the following instruction appears later in the ruling:

> In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

SSR 96–8p, 1996 WL 374184, at *5. Thus, to the extent the Commission argues that Step Two or Step Three findings are entirely irrelevant to the RFC determination, I reject that argument. A claimant's marked limitations do not magically disappear when the analysis moves to Step Four. All limitations, even non-severe ones, must be considered during the RFC assessment.

I likewise reject Gann's apparent argument that a marked limitation found at Step Two or Step Three must be reflected in the RFC. The RFC is not simply a laundry list of impairments and limitations. Instead, it is an explanation of "what [the claimant] can still do" despite his or her "physical or mental limitations." 20 C.F.R. § 404.1545(a)(1). Thus, for exam-

ple, a finding of a severe impairment at Step Two does not automatically require that the ALJ include corresponding functional limitations at Step Four. *See e.g., Griffeth v. Comm'r of Soc. Sec.,* 217 Fed. Appx. 425, 429 (6th Cir.2007) (quoting *Yang v. Comm'r of Soc. Sec.,* No. 00–10446–BC, 2004 WL 1765480, at *5 (E.D.Mich. July 14, 2004)) ("A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other."); *Taylor v. Astrue,* Civil Action No. BPG–11–0032, 2012 WL 294532 (D.Md. Jan. 31, 2012) ("It is possible, therefore, for an ALJ to find at step two that a claimant's condition is severe—because the medical evidence does not conclusively prove otherwise—and yet at step four find no substantial evidence that the condition actually limits the claimant's ability to work.") (citing cases).

In short, impairments found at Step Two or Step Three, whether severe or not, should be considered while formulating the RFC but do not automatically translate into limitations on the claimant's ability to work. Thus, the RFC in this case is not flawed simply because it does not reflexively recite the ALJ's prior finding that Gann had marked difficulties with regard to concentration, persistence or pace. Instead, the RFC must be reviewed in light of the entire record, as discussed further in Section B(3)(a)(iii), *infra.*

### ii. Dr. Marandola's Opinion

Gann also argues that the RFC is defective because the ALJ afforded great weight to Dr. Marandola's opinion but did not include all aspects of that opinion in the RFC. Doc. No. 12 at 11–12; Doc. No. 16 at 4–5. In particular, she points to Dr. Marandola's findings that she had poor memory, was highly volatile and could not handle money, AR 436, and argues that the ALJ failed to include these limitations in the RFC. Again, however, this argu-

ment misses the point. Giving great weight to a medical opinion does not mean that the entire opinion must be incorporated into the RFC. "Great weight" does not equate to the "controlling weight" that must be afforded to certain opinions of a treating physician, which means the ALJ must defer to that physician's medical opinions about the nature and severity of an applicant's impairments, including symptoms, diagnosis and prognosis, what an applicant is capable of doing despite the impairment, and the resulting restrictions. 20 C.F.R. § 416.927(c)(2); *Ellis v. Barnhart,* 392 F.3d 988, 995 (8th Cir.2005).

When no medical opinion is entitled to controlling weight, the ALJ must formulate a claimant's RFC "based on all the relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of her limitations." *Jones,* 619 F.3d at 971. Here, the ALJ determined that Dr. Marandola's opinion was entitled to more weight than other opinions in the record, including opinions provided by another consultative examiner and a state agency consultant. AR 21. That does not mean, however, that the ALJ was required to incorporate each and every aspect of that opinion into the RFC. Again, the RFC must be reviewed in light of the entire record, not simply in comparison to Dr. Marandola's opinion.

### iii. Substantial Evidence

As noted above, the Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey,* 433 F.3d at 577. If the evidence is such that the decision falls within the so-called "zone of choice," then it must be affirmed regardless of whether the reviewing court would have reached the same conclusion. *Hacker v. Barnhart,* 459 F.3d 934, 936 (8th Cir.2006). Here, I find that the ALJ's formulation of Gann's

RFC meets this standard. The ALJ provided a lengthy explanation, with precise citations to the record, for each component of the physical RFC and mental RFC. AR 18–24.

With regard to his physical RFC findings, the ALJ discussed Gann's treatment records and explained how those records support a conclusion that she can perform work at the medium exertional level. AR 18–19. He further noted that he had taken Gann's obesity into account, as required, and found that no evidence suggested additional physical limitations relating to obesity. AR 19. The ALJ then addressed the opinion evidence of record concerning Gann's physical impairments and provided good reasons for the weight given to all such evidence. AR 19. Having carefully reviewed the record, I conclude that the ALJ's physical RFC findings are supported by substantial evidence.[3]

As for Gann's mental RFC, the ALJ provided an overview of Gann's treatment records and explained why he considered them to be consistent with his RFC findings. AR 20–21. He also set forth a detailed analysis of the medical opinions concerning Gann's mental impairments, including Dr. Marandola's, and offered reasons for the weight afforded to each. AR 20–22. In affording Dr. Marandola's opinion great weight, the ALJ explained that the RFC restricts Gann to only occasional contact with co-workers and supervisors because of that opinion. AR 20. The ALJ then discussed the other opinions of record and explained how the opinion of another consultative examiner, Michael Baker, Ph. D., also supports the limitations incorporated into Gann's RFC. AR 21.

While the ALJ's mental RFC discussion does not specifically discuss his Step Three

finding that Gann has marked difficulties with regard to concentration, persistence or pace, he did include a restriction on Gann's ability to tolerate stress. AR 18. Specifically, he found that she could work at a stress level of no more than five on a scale of one to ten. *Id.* This restriction is consistent with the Step Three finding and further demonstrates that the ALJ properly considered the entire record in formulating Gann's mental RFC.

Finally, the ALJ undertook a lengthy analysis of Gann's credibility and explained why he discredited her subjective allegations of disabling symptoms. AR 22–24. As I will explain in Section V(3)(B), *infra,* the ALJ's credibility findings are supported by substantial evidence. Thus, I find that the ALJ properly considered all evidence of record, gave good reasons for the weight given to the various medical opinions and formulated an RFC that falls squarely within the permissible "zone of choice."

### b. The Questions to the VE

My conclusion that the ALJ's formulation of Gann's RFC is supported by substantial evidence largely answers her arguments concerning the VE's (written) testimony. Gann acknowledges that the hypothetical questions the ALJ posed to the VE were based on the ALJ's RFC findings. Doc. No. 12 at 10–11 (citing AR 274). Because the RFC was proper, hypothetical questions based on that RFC properly addressed "those impairments that the ALJ finds are substantially supported by the record as a whole." *Pickney,* 96 F.3d at 296.

In answering the ALJ's hypothetical questions, the VE reported that an individual with Gann's vocational profile and RFC

---

**3.** Apart from incorporating her contention that the ALJ should have found migraine headaches and fibromyalgia to be severe im-

pairments, Gann did not attempt to develop any specific arguments concerning the ALJ's physical RFC findings. Doc. No. 12 at 14.

could perform all of Gann's past relevant work, including certified nursing assistant, laborer, bus person, housekeeper, fast food worker and newspaper carrier. AR 278–79. Because this testimony was in response to properly-formed hypothetical questions, it constitutes substantial evidence supporting the ALJ's finding that Gann is able to perform past relevant work. *Hulsey*, 622 F.3d at 922.[4]

This leaves for discussion Gann's objection to the process by which the ALJ obtained the VE's opinions after the hearing. She relies on *Wallace v. Bowen*, 869 F.2d 187 (3d Cir.1989),[5] for the proposition that the ALJ should have conducted a new hearing because the VE's opinion was obtained post-hearing, thus depriving her counsel of the opportunity for cross-examination. *Wallace* holds that when an ALJ chooses to go outside the testimony adduced at the hearing in making a determination on a social security claim, the ALJ must afford the claimant not only an opportunity to comment and present evidence but also an opportunity to cross-examine the authors of any post-hearing reports when such cross-examination is necessary to the full presentation of the case, and must reopen the hearing for that purpose if requested. *Id.* at 193. In *Wallace*, the claimant's attorney made various written objections to the use of post-hearing reports, including the observation that he had not had "the opportunity to confront these physicians and challenge their conclusions." *Id.* at 194. The ALJ nonetheless relied on the post-hearing reports without providing an opportunity for cross-examination. *Id.* Under these circumstances, the Third Cir-

cuit Court of Appeals held that remand was necessary to permit cross-examination. *Id.*

The Eighth Circuit Court of Appeals addressed *Wallace* in *Coffin v. Sullivan*, 895 F.2d 1206 (8th Cir.1990), a case neither party cited. The court stated, in relevant part:

> In the case before us, the report was issued post-hearing, and the vocational expert who prepared the report did not examine Coffin. The practice of allowing post-hearing reports is not uncommon. The ALJ frequently will not close the record after the hearing either to order a post-hearing examination of the claimant or to allow the claimant to introduce post-hearing evidence in support of his claim. *See Wallace v. Bowen*, 869 F.2d 187, 191–92 (3d Cir.1988); *Hudson v. Heckler*, 755 F.2d 781, 783 (11th Cir. 1985), *cert. granted, Bowen v. Hudson*, 488 U.S. 980, 109 S.Ct. 527, 102 L.Ed.2d 559 (1988), *aff'd on other grounds, Sullivan v. Hudson*, 490 U.S. 877, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989). Further, this circuit affirmed the decision of an ALJ who created hypothetical claimants, relied on the reports of vocational experts, and submitted post-hearing interrogatories. *See Buckler v. Bowen*, 860 F.2d 308, 310–11 (8th Cir.1988). Thus, we do not find that the factual distinctions of whether the reports were issued before or after the hearing, or whether the claimant was examined by the reporting expert, to be crucial to our decision. Rather, the proper focus in this case is on the requirements of due process, and whether the post-hearing in-

---

4. In addition, and as noted above, the Commissioner is correct that VE testimony was not necessary at Step Four, as it was Gann's burden to prove that she was unable to perform past relevant work. *Lewis*, 353 F.3d at 648.

5. Bizarrely, both parties cited *Wallace* as a decision of the Eighth Circuit Court of Appeals, thus suggesting it to be binding authority. Doc. No. 12 at 14; Doc. No. 13 at 11. It isn't.

terrogatories posed to the vocational expert satisfied those requirements.

Due process requires that a claimant be given the opportunity to cross-examine and subpoena the individuals who submit reports. *See Richardson* [*v. Perales* ], 402 U.S. [389,] 402, 91 S.Ct. [1420,] 1427 [28 L.Ed.2d 842 (1971) ]; *McClees v. Sullivan,* 879 F.2d 451, 452 (8th Cir.1989). The ALJ, however, is not required to inform the claimant's attorney that the claimant has a right to cross-examine the vocational expert. *See Hudson,* 755 F.2d at 785. *The ALJ is required to allow the claimant to cross-examine the witness, but if the claimant's attorney fails to object to the post-hearing reports or remains silent when the opportunity to request cross-examination arises, the right to cross-examination is waived. See Wallace,* 869 F.2d at 194 (claimant's attorney objected to post-hearing reports and did not waive right to cross-examination, but this conduct must be contrasted with that of an attorney who does not object); *Hudson,* 755 F.2d at 784–85 (claimant's legal representative had opportunity to cross-examine doctor but did not respond and, thus, waived right).

As previously indicated, in this case the ALJ sent Coffin's attorney two letters which indicated that Coffin could object to the interrogatories, propose his own interrogatories, comment on the evidence, and submit additional evidence. We hold that these letters satisfied due process requirements. However, our holding is limited to the facts of this case. If Coffin had been unrepresented, he would not have waived his right to cross-examination. If a claimant represents himself, the ALJ has a special responsibility to inform the claimant that he has the right of cross-examination. *Coffin, however, was represented by a lawyer, an individual who is presumed to know about the right of cross-*

*examination. The ALJ, therefore, is not required to list and explain every option available to an attorney in order to meet due process requirements. Thus, no due process violation occurred.* 895 F.2d at 1211–12 [emphasis added].

Here, the ALJ complied with *Coffin* by disclosing the new VE evidence to Gann's counsel and giving him the opportunity to respond. AR 280. While Gann's counsel did submit a detailed response, he did not request the opportunity to cross-examine the VE. AR 282–83. Indeed, he stated that "in the interest of time," he would not request that additional interrogatories be submitted to the VE. AR 282. Instead, he highlighted alleged flaws in the VE's answers and noted that the VE had not had the benefit of hearing Gann's testimony. AR 282–83.

If the ALJ would have rejected a request for cross-examination, or would have refused a request to submit additional interrogatories to the VE, Gann would have a valid complaint. *See, e.g., Rahe v. Astrue,* 840 F.Supp.2d 1119, 1137–39 (N.D.Iowa 2011) (claimant's due process rights were violated when the claimant's counsel submitted additional interrogatories but the ALJ declined to forward those interrogatories to the VE). Under the facts present here, however, Gann's procedural due process argument is without merit.

### C. Gann's Credibility

#### 1. Applicable Standards

"The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall,* 274 F.3d at 1218. Accordingly, the court must "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Guilliams v. Barn-*

*hart,* 393 F.3d 798, 801 (8th Cir.2005). An ALJ may discount a claimant's subjective complaints if there are inconsistencies in the record as a whole. *Id.* "An ALJ who rejects [subjective] complaints must make an express credibility determination explaining the reasons for discrediting the complaints." *Singh v. Apfel,* 222 F.3d 448, 452 (8th Cir.2000).

In assessing a claimant's credibility, the ALJ must consider "the claimant's prior work history; daily activities, duration, frequency, and intensity of pain; dosage, effectiveness and side effects of medication; precipitating and aggravating factors; and functional restrictions." *Medhaug v. Astrue,* 578 F.3d 805, 816 (8th Cir.2009) (citing *Polaski,* 739 F.2d at 1322); *see also* SSR 96–7p, 1996 WL 374186. The ALJ is not required to discuss each factor as long as he or she "acknowledges and considers the factors before discounting a claimant's subjective complaints." *Moore v. Astrue,* 572 F.3d 520, 524 (8th Cir.2009). Another relevant factor is "the absence of objective medical evidence to support the complaints." *Mouser v. Astrue,* 545 F.3d 634, 638 (8th Cir.2008) (quoting *Wheeler v. Apfel,* 224 F.3d 891, 894 (8th Cir.2000)). However, lack of objective medical evidence cannot be the sole reason for discounting a claimant's subjective complaints. *Mouser,* 545 F.3d at 638.

When an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, the court should normally defer to the ALJ's credibility determination. *Gregg v. Barnhart,* 354 F.3d 710, 714 (8th Cir.2003). It is not the court's role to re-weigh the evidence. *See* 42 U.S.C. § 405(g); *see also Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir.2000) ("[I]f, after reviewing the record, [the Court] find[s] that it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Commissioner's] findings, [the Court] must affirm the decision of the Commissioner.") [citations and quotations omitted].

### 2. Analysis

The ALJ commenced the credibility analysis by referencing SSR 96–7p, which lists the relevant factors. AR 23. He then provided the following reasons for concluding that Gann's subjective allegations were "less than fully credible:"

1. There is no evidence that she complained of energy or motivation to any treating doctors, and no evidence that her medications were adjusted because of such complaints.

2. There is no evidence that she has difficulties performing her daily activities and those activities tend to show that she has the ability to perform work.

3. She did not demonstrate difficulty focusing or concentrating during the hearing.

4. Her limited treatment history does not support her allegations and there is no evidence that she received regular mental health treatment after July 2012.

5. She has been described as exhibiting exaggeration during examinations.

AR 23–24. Gann attacks three of these reasons as being inaccurate.

First, she states that she complained about lack of energy on two occasions, once to Molly Earleywine, P.A.-C., and once to Laurie Warren, P.A. Doc. No. 12 at 15 (citing AR 503, 713–14). Gann did tell Ms. Warren on May 2, 2011, that her "energy and motivation have been up and down." AR 503. Likewise, in completing a questionnaire for Ms. Earleywine on December 8, 2011, Gann answering an inquiry about feeling tired or having little energy by responding: "Nearly every day." AR

713–14. Thus, the ALJ erred in stating that there is "no evidence that [Gann] complained of energy and motivation to any of her treating doctors." AR 23.[6] More accurately, he should have stated that there is *little* evidence of such complaints. In addition, Gann does not challenge the ALJ's statement that her medication was never adjusted due to complaints that she lacked energy or motivation. Thus, the ALJ's larger point—which is that the contemporaneous treatment records are not consistent with Gann's subjective allegations concerning energy and motivation [7]— is not entirely inaccurate.

Second, Gann points out that she did seek mental health treatment on three occasions after July 2012. Doc. No. 12 at 15 (citing AR 1157, 1159 and 1161). And, in fact, Gann saw Dr. Idahosa, a psychiatrist, on August 24, 2012, September 24, 2012, and October 22, 2012. AR 1157, 1159 and 1161. Thus, the ALJ's statement that Gann did not receive regular mental health treatment after July 2012 is incorrect. I will not consider that to be a good reason supporting the ALJ's decision to discredit Gann's subjective allegations.

Third, Gann takes issue with the ALJ's reliance on comments contained in a written consultative examination report from January 2010. Doc. No. 12 at 15. That report, which is signed by both James Rusch, P.A.-C, and Jeffrey Krohn, M.D.,[8] raised issues about Gann's credibility. AR 292–93. At one point, the report states that Gann "seems to want to exaggerate her impairments" and provides examples. AR 293. It then concludes as follows:

Perhaps I have become jaded over the years, but Bonnie seems to be an expert manipulator. Maybe it is her extensive hospitalizations but I have never seen anyone who could so easily list off mental health diagnoses and medication lists without error or notes. If she truly has ADHD and learning disabilities this should have been much more difficult. It's as though she has studied for today's evaluation. She has been institutionalized with hospitals and prisons and I get the impression that this has trained her to give the answers she anticipates I am looking for. I am not an expert in mental health. I would not be able to determine her impairment for these problems. As far as physical impairments are concerned, I do not believe she has significant impairment. She claims to have carpal tunnel syndrome but states that she refuses to have any surgical correction of this problem. I did not she [sic] any muscle wasting secondary to this. She denies any parasthesias. She denies any problems handling objects. That is usually the first complaint patients complain of with carpal tunnel syndrome—they can't handle objects well due to the parasthesias. I think an evaluation by any orthopedist is necessary and (if necessary) definitive treatment be initiated. Her ranges of motion are fairly normal, her strength is normal and her gait is normal. Her Fibromyalgia Evaluation indicates that she claims to feel pain over most of the control points as well as almost all of the actual points. If I can be of further assistance please let me know.

6. Technically, neither Ms. Earleywine nor Ms. Warren was a "treating doctor." However, I assume the ALJ did not intend to split hairs to that degree.

7. Gann did not testify about lacking energy or motivation during the hearing, but she did include that allegation in her written report of disability. AR 40–63, 232, 235.

8. I agree with Gann that the report appears to have been written by Mr. Rusch, as Dr. Krohn did not sign off on the report until 12 days later. AR 293.

*Id.* Gann complains that Mr. Rusch "had no business attacking the credibility of Gann's statements regarding her mental health" and concludes that "the ALJ erred in using them to discount Gann's credibility." Doc. No. 12 at 15.

Gann cites no authority for the proposition that an ALJ cannot give weight to a consultative examiner's concerns that the claimant was exaggerating symptoms. Clearly, a claimant's past exaggeration of impairments is an appropriate credibility factor. *Stephens v. Shalala,* 46 F.3d 37, 39 (8th Cir.1995). Moreover, while Mr. Rusch acknowledged that he is not "an expert in mental health," he did not simply attack "the credibility of Gann's statements regarding her mental health," as Gann now suggests. He provided specific examples as to how, and why, he believes Gann exaggerated her physical symptoms, as well. AR 293. I reject Gann's unsupported legal argument that the ALJ erred in considering Mr. Rusch's concerns.

Gann does not address the ALJ's other stated reasons for discounting her credibility. With regard to activities of daily living, the ALJ noted that Gann walks to the library, takes the bus, attends appointments and is able to shower and dress herself. AR 24. He further observed that Gann performs chores, attends meetings and church services, does her own shopping and sometimes goes to temporary work agencies. *Id.* The ALJ found that these activities suggest that Gann has greater physical and mental capabilities than she alleges. *Id.* " 'Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility.' " *Heino v. Astrue,* 578 F.3d 873, 881 (8th Cir.2009) (quoting *Johnson v. Apfel,* 240 F.3d 1145, 1148 (8th Cir.2001)). The ALJ's consideration of Gann's daily activities was appropriate and his findings are supported by substantial evidence.

The ALJ also noted that Gann appeared to have no difficulty focusing or concentrating during the hearing. AR 23. While an ALJ's observations cannot be the *sole* basis of his or her decision, "it is not an error to include his observations as one of several factors." *Lamp v. Astrue,* 531 F.3d 629, 632 (8th Cir.2008). Indeed, "[t]he ALJ's personal observations of the claimant's demeanor during the hearing is completely proper in making credibility determinations." *Johnson,* 240 F.3d at 1147–48.

In short, and apart from the ALJ's error concerning mental health treatment after July 2012, the reasons supplied by the ALJ for discounting Gann's credibility are valid factors supported by substantial evidence. As such, I must defer to the ALJ's credibility determination. *Gregg,* 354 F.3d at 714. I reject Gann's argument that the ALJ erred in this regard.

## VI. CONCLUSION AND RECOMMENDATION

For the reasons set forth herein, I RESPECTFULLY RECOMMEND that the Commissioner's determination that Gann was not disabled be **affirmed** and that judgment be entered in favor of the Commissioner and against Gann.

Objections to this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed.R.Civ.P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of

fact contained therein. *United States v. Wise,* 588 F.3d 531, 537 n. 5 (8th Cir.2009).

**IT IS SO ORDERED.**

**DATED** this 30th of January, 2015.